# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| NCW PROPERTIES, LLC, ) | Case No. 18-20215 |
| ) | |
| Debtor. ) | Chapter 11 |
| _____) | |
| ) | |
| DONALD A. STUKES, Liquidating Trustee ) | |
| for the Debtor's Estate pursuant to the Debtor's ) | |
| Plan of Liquidation, ) | |
| ) | Hon. Timothy A. Barnes |
| Plaintiff, ) | |
| ) | Adv. Proc. No. _____ |
| v. ) | |
| ) | |
| TRIUMPH CAPITAL NCW SERIES, LLC, ) | |
| CHUCK BRETZ & ASSOCIATES, P.C., and ) | |
| CHARLES BRETZ, individually, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## LIQUIDATING TRUSTEE'S COMPLAINT TO AVOID AND RECOVER TRANSFERS

Donald A. Stukes, Liquidating Trustee for the Debtor's Estate (the "Liquidating Trustee"), by and through its attorneys, Natarajan Worstell LLC, presents the instant Complaint (the "Complaint") for NCW Properties, LLC (the "Debtor"), to avoid and recover preferential transfers against Defendant Triumph Capital NCW Series, LLC ("Defendant Triumph"), Defendant Chuck Bretz & Associates, P.C. ("Defendant Bretz Law Firm"), and Defendant Charles Bretz, Individually ("Defendant Bretz"), (collectively, "Defendants") as follows:

### NATURE OF THE CASE

1. This action is commenced pursuant to sections 544, 547, 548 and 550 of chapter 11 of

title 11 of the United States Code ("Bankruptcy Code"), applicable non-bankruptcy law, including the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq.,* and Fed. R. Bankr. P. 7001(1), (7), and (9), to avoid and recover from Defendants, or from any other person or entity for whose benefit the transfers were made, preferential transfers of property made by Debtor to the Defendants, as insiders of the Debtor (as defined below) within two years of the Petition Date and for fraudulent transfers to the Defendants within the four (4) year period prior to the filing of the Petition Date and this instant adverse Complaint.

2. In addition, the Liquidating Trustee seeks to disallow, pursuant to sections 502(b) and (d) of the Bankruptcy Code, any claim that Defendants have filed or asserted against the Debtor or that have been scheduled for Defendants, including but not limited to all amounts paid by Debtor to Defendants and other payments referenced in this Complaint. The Liquidating Trustee has pending with the Court the Liquidating Trustee's objection to the claim of Chuck Bretz & Associates, P.C. (the "Objection") [Doc. 199].

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334, because the proceeding arises under, arises in or is related to a case under the Bankruptcy Code.

4. Further, Defendant Bretz Law Firm has previously submitted to the jurisdiction of this Court by virtue of its prior Response to the Objection [Doc. 213].

5. This adversary proceeding is a "core" proceeding to be heard and determined by this Court, pursuant to 28 U.S.C. § 157(b)(2).

6. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory and legal predicates for the relief sought herein are 11 U.S.C. §§ 544,

547, 548 and 550, applicable non-bankruptcy law, including the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq.*, and Fed. R. Bankr. P. 7001(1), (7), and (9).

8. To the extent that the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court") may not constitutionally or statutorily enter a final judgment on any counts of the Complaint, the Liquidating Trustee consents to the Bankruptcy Court's entry of final judgment on all counts.

9. To the extent that the Defendants do not consent to the entry of final judgment on all or some counts of the Complaint, the Liquidating Trustee consents to the bankruptcy court entering proposed findings of fact and conclusions of law for transmittal to the United States District Court for the Northern District of Illinois, Eastern Division, on any counts upon which it is determined that the Bankruptcy Court may not enter final judgment.

## CASE BACKGROUND

10. On July 12, 2018 (the "Petition Date"), the Debtor commenced this proceeding by filing a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

11. On August 21, 2019, this Court approved the Debtor's Chapter 11 Plan of Liquidation.

12. On August 21, 2019, Donald A. Stukes was appointed, qualified, and has continued to serve as Debtor's Liquidating Trustee under the Plan.

13. The Debtor's Liquidating Trustee has engaged the undersigned as counsel pursuant to the Plan.

## THE DEBTOR

14. The Debtor is a Delaware limited liability company with its primary place of business located in Joliet, Illinois.

15. The Debtor was the owner of a NASCAR license and held the license to build, brand,

and operate NASCAR car washes in territories including the United States and Canada pursuant to a certain License Agreement, dated as of January 1, 2018, with NASCAR Licensed Operations LLC, an agreement which replaced prior license agreements between the parties.

16. Prior to September 30, 2019, certain car washes that were operated through several other organized entities which were subsidiaries of the Debtor and/or licensees of the Debtor's Nascar license agreement and operated pursuant to a certain Master Lease Agreement between the Debtor and Store Capital Acquisitions, LLC (as defined below)[1], including but not limited to:

   a. NCW Berwyn RE, LLC;
   b. NCW Joliet RE, LLC;
   c. NCW Elmwood Park RE, LLC;
   d. NCW Naperville RE, LLC;
   e. NCW Wyoming, LLC; and
   f. NCW Operations Aurora, LLC (f/k/a GB&S Car Wash Properties, LLC).

17. Collectively, the entities identified in 16(a)-(f) *supra* shall be referred to in the instant complaint as the "Original NCW Entities".

18. Prior to September 30, 2019, the Debtor owned equity interests in the Original NCW Entities.

19. Prior to September 30, 2019, the Debtor maintained an active operating agreement (the "Operating Agreement"), originally dated January 29, 2016, amended February 24, 2016, with an active date (as listed) of February 1, 2017. A copy of the Operating Agreement is attached herein as Exhibit "A".

---

[1] On September 30, 2019, this Court approved and the Debtor closed on the sale/assumption and assignment of its assets.

20. The Operating Agreement identifies lists of Class A and Class B members and said members' relative membership interests in the Debtor. *See* Exhibit A, p. 23.

21. Said listed members include Defendant Triumph Capital, holding a listed four and a half percent (4.5%) of Class B membership interest (the "Triumph 4.5% Interest in Debtor"); Debtor obtained no reasonable consideration in exchange for the Triumph 4.5% Interest in Debtor. *See* Exhibit A, p. 23.

22. Defendant Triumph is, upon information and belief, owned and operated by Defendant Charles Luther Bretz ("Bretz, Individually").

23. Defendant Bretz also is the principal of Defendant Chuck Bretz & Associates, P.C., a law firm based in Joliet, Illinois ("Bretz Law Firm").[2]

24. The Liquidating Trustee asserts that the Triumph 4.5% Interest in Debtor was inappropriately made for the benefit of Defendants during the relevant four (4) year period prior to the filing of the instant Complaint.

25. Defendant Bretz Law Firm represented the Debtor commencing on or before 2016 through the Petition Date. Further, Defendant Bretz Law Firm also represented a certain insider manager of the Debtor personally in at least one law suit.

26. Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph are insiders of the Debtor as that term is defined in 11 U.S.C. §101(31).

27. In the ninety (90) day period prior to the Petition Date, Defendant Bretz Law Firm received three thousand eight hundred forty four dollars and fifty-six cents ($3,844.56) from the Debtor.

---

[2] Per the Illinois Secretary of State's Website (as of February 11, 2020), the Bretz Law Firm is now known as Bretz, Flynn & Associates, P.C. *See* www.cyberdriveillinois.com.

28. In the period covering ninety-one (91) days to three hundred sixty-five (365) days prior to the Petition Date, Defendant Bretz Law Firm received nineteen thousand one hundred forty-four dollars and fifty-six cents ($19,144.56) from the Debtor.

29. Pursuant to 11 U.S.C. §547, the time periods noted in para. 27 and para. 28 are collectively described as the "Preference Period."

30. In the period covering three hundred sixty-six (366) days to seven hundred thirty (730) days prior to the Petition Date, Defendant Bretz Law Firm received twenty thousand dollars ($20,000.00) from the Debtor.

31. Collectively, the amounts listed in para. 27, para. 28, and para. 30 *infra* are referred to as the "Payments to the Defendants," which total forty two thousand nine hundred eighty-nine dollars and twelve cents ($42,989.12).

32. The Triumph 4.5% Interest in Debtor (discussed in para. 22 *supra*), along with the Payments to the Defendants (discussed in para. 27-31 *supra*), are collectively referred to as "the Transfers".

THE STORE TRANSACTIONS

33. On February 24, 2016, Store Master Funding IX, LLC, a non-party lender ("Store Master") and Debtor (through five of the six Original NCW Entities, namely those noted in 16(b-f) *supra*) formally memorialized and closed on a financial transaction, with Store Master as buyer and Debtor (through the above-noted entities) as seller.

34. This financial transaction and closing between Store Master and Debtor asserted a sales price of Sixteen Million, Nine Hundred Eleven Thousand, Nine Hundred and Seventy-Eight Dollars ($16,911,978.00).

35. On February 24, 2016, Store Capital Acquisitions, LLC, a non-party lender ("Store

Capital") and Debtor (through one of the six Original NCW Entities, namely that noted in 16(a) *supra*) formally memorialized and closed on a financial transaction, with Store Capital as lender and Debtor (through the above-noted entity) as borrower.

36. This financial transaction and closing between Store Capital and Debtor asserted a loan amount of Two Million, Four Hundred Eighteen Thousand, and Twenty-Two Dollars ($2,418,022.00).

37. On February 24, 2016, Store Capital and Debtor (directly) formally memorialized and closed on a financial transaction, with Store Capital as lender and Debtor (directly) as borrower.

38. This financial transaction and closing between Store Capital and Debtor asserted a loan amount of Three Million Dollars ($3,000,000.00).

39. Collectively, Store Master and Store Capital shall be referred to in the instant complaint as the "Store Entities".

40. Collectively, the financial transactions noted above between Store Master and Debtor, and Store Capital and Debtor, shall be referred to in the instant complaint as the "Store Transactions". A copy of the relevant closing statements for the Store Transactions is attached herein as Group Exhibit "B".

41. Without the finances obtained by Debtor through the Store Transactions, Debtor was effectively insolvent.

42. Additional documents were included along with the above-noted closing statements, identifying information from and regarding the Store Transactions, and referencing the Store Transactions individually and collectively. A copy of said additional documents ("Additional Closing Documents") is attached herein as Exhibit "C".

43. The Additional Closing Documents of the Store Transactions identify monetary

distributions of significant sums, which each such amount listed as a membership buyout, along with a name and payoff amount. See Exhibit C, p. 2.

## THE BRETZ DEFENDANTS

44. Defendant Bretz has acted as attorney for Debtor, the Original NCW Entities, and other entities related to Debtor not referenced in the instant Complaint.

45. Defendant Bretz Law Firm has acted as attorney for Debtor, the Original NCW Entities, and other entities related to Debtor not referenced in the instant Complaint.

46. Defendant Bretz Law Firm represented Debtor in the Store Transactions.

47. Defendant Bretz Law Firm has collected and continues to demand fees relating to its alleged prior representations of Debtor and other related parties.

48. Defendant Triumph has had no ties or connection to Debtor (aside from the Triumph 4.5% Interest in Debtor), except through its principal, Defendant Bretz.

49. No evidence exists to explain why Defendant Triumph was given the Triumph 4.5% Interest in Debtor.

50. Upon information and belief, neither Defendant Bretz nor Defendant Bretz Law Firm ever obtained an enforceable or appropriate executed engagement agreement from Debtor regarding any legal services to be rendered by Defendant Bretz and/or Defendant Bretz Law Firm.

51. While as acting as attorney for Debtor, the Original NCW Entities, and other entities related to Debtor not referenced in the instant Complaint, Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph were transferred significant property interest from Debtor, in the form of the Triumph 4.5% Interest in Debtor and the Payments to the Defendants.

52. Said property interest transferred from Debtor to Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph was transferred without proper consideration or interest.

53. Accordingly, Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph acquired said property interest from Debtor expressly adverse to Debtor's interest.

54. Further, Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph's acquisition of said property interest requires overt scrutiny, as Rule 1.8 of the American Bar Association's Model Rules of Professional Conduct and Rule 1.8 of the Illinois Rules of Professional Conduct, which read as follows:

> (a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client, unless:
>
>> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;
>>
>> (2) the client is informed in writing that the client may seek the advice of independent legal counsel on the transaction, and is given a reasonable opportunity to do so; and
>>
>> (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

55. Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph's acquisition of property interest from Debtor was through a business transaction, and Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph knowingly acquired an ownership, possessory, security or other pecuniary interest adverse to Debtor.

56. Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph's acquisition of property interest from Debtor was not fair and reasonable to Debtor and was not fully disclosed and transmitted in writing in a manner that could be reasonably understood by Debtor.

57. Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph did not inform Debtor in writing that Debtor may seek the advice of independent legal counsel on the relevant business transaction(s), and Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph did not give Debtor a reasonable opportunity to do so.

58. Debtor did not give informed consent, in a writing signed by Debtor, to the essential terms of the relevant business transaction(s) at issue and Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph's role in the relevant business transaction(s), including whether Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph is representing Debtor in the relevant business transaction(s).

59. The Debtor was, and was believed to be by its insiders, insolvent at the time of the time of the Transfers.  The Debtor received no reasonably equivalent value in exchange for the Transfers.  The Liquidating Trustee seeks to avoid and recover the Transfers in this action pursuant to Sections 544, 547, 548 and 550 of the Bankruptcy Code and the Illinois Uniform Fraudulent Transfer Act.

60. Further, the closings of the Store Transactions (at which Defendant Bretz Law Firm represented the Debtor) rendered the Debtor insolvent and without adequate capitalization and further ensured payments to parties who provided little or no consideration to the Debtor.

61. By engineering the closings of the Store Transactions after it became evident that the

Debtor fell more than $1,000,000.00 short, Defendant Bretz and Defendant Bretz Law Firm acted for and in its own best interest, generating legal fees and gaining a membership interest in the Debtor.

### THE BRETZ LAW FIRM CLAIM

62. Additionally, Defendant Bretz Law Firm has filed a claim (Claim No. 12) in the underlying matter, stating an amount of Twenty-Eight Thousand Nine Hundred Ninety-Eight Dollars ($28,998.56) for "legal services rendered", to which the Liquidating Trustee and Debtor have filed its written objection [Doc. No. 199].

63. The Liquidating Trustee incorporates its objections [from Doc. No. 199] herein.

### COUNT I – AVOIDANCE OF PREFERENTIAL TRANSFERS (90 DAYS) AGAINST DEFENDANT BRETZ, DEFENDANT BRETZ LAW FIRM, AND DEFENDANT TRIUMPH CAPITAL
### 11 U.S.C. § 547

64. The Liquidating Trustee repeats and realleges paragraphs 1 through 63 of this Complaint as though fully set forth herein.

65. As described above, during the first ninety (90) days of the Preference Period, the Debtor made the Transfers to or the benefit of the Defendants in an aggregate amount of $3,844.56.

66. The Transfers constituted transfers of an interest in property of the Debtor.

67. During the Preference Period, Defendants were a creditor at the time of each Transfer by virtue of allegedly supplying to the Debtor legal services, for which the Debtor was obligated to pay.

68. Each relevant Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor to the Defendants before such Transfers were made, as asserted by the Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the Debtor.

69. Each Transfer was made while the Debtor was insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the first ninety (90) days of the Preference Period pursuant to Section 547(f) of the Bankruptcy Code.

70. Several Transfers were made during the first ninety (90) days of the Preference Period, as described *supra*.

71. As a result of each of the relevant Transfers during the first ninety (90) days of the Preference Period, the Defendants received more than the Defendants would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the relevant Transfers had not been made; and (iii) the Defendants received payments of its debts under the provision of the Bankruptcy Code.

72. In accordance with the foregoing, each Transfer is avoidable pursuant to Section 547(b) of the Bankruptcy Code.

73. Defendants were the initial transferees of the relevant Transfers or the immediate or mediate transferees of such initial transferees or the person for whose benefit the relevant Transfers were made.

74. Based upon the foregoing, Plaintiff is entitled to an order and judgment against Defendants: (i) avoiding the relevant Transfers under section 547(b) of the Bankruptcy Code; and (ii) entitling Plaintiff to recover the relevant Transfers or the value of the Transfers from Defendants under Section 550(a) of the Bankruptcy Code, together with the award of pre- and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment and the costs of this action.

### COUNT II – AVOIDANCE OF PREFERENTIAL TRANSFERS (91-365 DAYS) AGAINST DEFENDANT BRETZ, DEFENDANT BRETZ LAW FIRM, AND DEFENDANT TRIUMPH CAPITAL
### 11 U.S.C. § 547

75. The Liquidating Trustee repeats and realleges paragraphs 1 through 74 of this Complaint as though fully set forth herein.

76. As described above, from the ninety-first day to the three hundred sixty-fifth (91st – 365th) day of the Preference Period (the "Insider Preference Period"), the Debtor made the Transfers to or the benefit of the Defendants in an aggregate amount of $19,144.56.

77. The Transfers constituted transfers of an interest in property of the Debtor.

78. During the Insider Preference Period, Defendants were a creditor at the time of each Transfer by virtue of allegedly supplying to the Debtor legal services, for which the Debtor was obligated to pay.

79. Each relevant Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor to the Defendants before such Transfers were made, as asserted by the Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the Debtor.

80. Each Transfer was made while the Debtor was insolvent.

81. The Defendants are insiders as defined by Section 101(31) of the Bankruptcy Code.

82. Several Transfers were made during the Insider Preference Period, as described *supra*.

83. As a result of each of the relevant Transfers during the Insider Preference Period, the Defendants received more than the Defendants would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the relevant Transfers had not been made; and (iii) the Defendants received payments of its debts under the provision of the Bankruptcy Code.

84. In accordance with the foregoing, each Transfer is avoidable pursuant to Section 547(b) of the Bankruptcy Code.

85. Defendants were the initial transferees of the relevant Transfers or the immediate or mediate transferees of such initial transferees or the person for whose benefit the relevant Transfers were made.

86. Based upon the foregoing, Plaintiff is entitled to an order and judgment against Defendants: (i) avoiding the relevant Transfers under section 547(b) of the Bankruptcy Code; and (ii) entitling Plaintiff to recover the relevant Transfers or the value of the Transfers from Defendants under Section 550(a) of the Bankruptcy Code, together with the award of pre- and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment and the costs of this action.

### COUNT III – AVOIDANCE OF FRAUDULENT CONVEYANCES AGAINST DEFENDANT BRETZ, DEFENDANT BRETZ LAW FIRM, AND DEFENDANT TRIUMPH CAPITAL
### 11 U.S.C. § 548(a)

87. The Liquidating Trustee repeats and realleges paragraphs 1 through 86 of this Complaint as though fully set forth herein.

88. The Debtor made the Transfers to the Defendants on or within two years of the Petition Date.

89. The Transfers were made with the actual intent to hinder, delay or defraud entities to which the Debtor was indebted or became indebted, on or after the dates such Transfers were made.

90. The Debtor did not receive reasonably equivalent value in exchange for the Transfers.

91. The Defendants are insiders as defined by Section 101(31) of the Bankruptcy Code.

92. The Debtor was insolvent on the dates that the Transfers were made, or became insolvent as a result of the Transfers; the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the Debtor was

an unreasonably small capital; or the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

### COUNT IV – FRAUDULENT TRANSFER AGAINST DEFENDANT BRETZ, DEFENDANT BRETZ LAW FIRM, AND DEFENDANT TRIUMPH CAPITAL
### 740 ILCS § 160/5(a)(1)

93. The Liquidating Trustee repeats and realleges paragraphs 1 through 92 of this Complaint as though fully set forth herein.

94. The Debtor made the Transfers on or within four years of the Petition Date, with the actual intent to hinder, delay or defraud entities to which the Debtor was indebted or became indebted, on or after the dates such transfers were made.

95. There are creditors of the Debtor's estate whose claims arose before Transfers were made.

96. With respect to the Transfers:

   a. The Transfers were to, or for the benefit of Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph.

   b. By virtue of Defendant Bretz and Defendant Bretz Law Firm's role as Debtor's attorney, Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph were insiders (as defined in 740 ILCS § 160/2(g)(2)(c)), by virtue of Defendant Bretz' control over Debtor and Defendant Bretz Law Firm's control over Debtor.

   c. The value of consideration received by Debtor from Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph, was not reasonably equivalent to the value of the assets transferred.

### COUNT V – FRAUDULENT TRANSFER AGAINST DEFENDANT BRETZ, DEFENDANT BRETZ LAW FIRM, AND DEFENDANT TRIUMPH CAPITAL
### 740 ILCS § 160/5(a)(2)

97. The Liquidating Trustee repeats and realleges paragraphs 1 through 96 of this Complaint as though fully set forth herein.

98. The Debtor made the Transfers to Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph on or within four years of the instant Complaint.

99. The Debtor received less than a reasonably equivalent value in exchange for the Transfers.

100. The Debtor was insolvent on the dates that the Transfers were made, or became insolvent as a result of the Transfers; the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; or the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

101. There are creditors of the Debtor's estate whose claims arose before the Transfers were made.

### COUNT VI – FRAUDULENT TRANSFER AGAINST DEFENDANT BRETZ, DEFENDANT BRETZ LAW FIRM, AND DEFENDANT TRIUMPH CAPITAL
### 740 ILCS § 160/6(a)

102. The Liquidating Trustee repeats and realleges paragraphs 1 through 101 of this Complaint as though fully set forth herein.

103. On or within four years of the instant Complaint, the Debtor made the Transfers to Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph.

104. There are creditors of the Debtor's estate whose claims arose before the Transfers were made.

105. The Debtor made the Transfers to Defendant Bretz, Defendant Bretz Law Firm, and Defendant Triumph without receiving a reasonably equivalent value in exchange for the Transfers.

106. The Debtor was insolvent on the dates that the Transfers were made, or became insolvent as a result of the Transfers.

## COUNT VII – DISALLOWANCE OF ALL CLAIMS
## 11 U.S.C. §502

107. The Liquidating Trustee repeats and realleges paragraphs 1 through 106 of this Complaint as though fully set forth herein.

108. The Defendants are an individual and entities, respectively, from which property is recoverable under Section 550 of the Bankruptcy Code.

109. The Defendants are transferees of the Transfers avoidable under Sections 547 and 548 of the Bankruptcy Code.

110. Pursuant to Section 502(b) of the Bankruptcy Code, the Liquidating Trustee objects to any claims presented by the Defendants, including but not limited to Claim No. 12 filed by Defendant Bretz Law Firm.

111. Pursuant to Section 502(b) and (d) of the Bankruptcy Code, any and all claims of the Defendants, including but not limited to Claim No. 12 filed by Defendant Bretz Law firm, must be disallowed.

WHEREFORE, the Liquidating Trustee respectfully requests that this Court enter judgment in favor of the Liquidating Trustee, granting all relief requested in Counts I through VII of the Complaint or otherwise, and grant such other and further relief as this Court deems just and equitable.

                                           Respectfully submitted,

                                           **DONALD A. STUKES, LIQUIDATING TRUSTEE FOR NCW PROPERTIES, LLC**

Dated: February 21, 2020

                                           By:     /s/ Ram Natarajan
                                                        One of Its Attorneys

Ram Natarajan (ARDC # 6283603)
Adam Murad (ARDC # 6302601)
NATARAJAN WORSTELL LLC
33 N. LaSalle St., Suite 1930
Chicago, IL 60602
(630) 248-2495 - Telephone
(630) 971-1121 - Facsimile